BEFORE THE FIRST DIVISION, DECEMBER 18, 1952

**No. 56994.**—Milton Diamond and Massce-Barnett Co., Inc. v. United States, protest 158518–K (New York).

OLIVER, Chief Judge: This case concerns classification of a 16-millimeter sound motion-picture projector. Two units comprise the importation. Each is enclosed in an individual metal case with metal handles for use in convenience in carrying. One of the metal cases contains the mechanism for projecting the picture and transmitting or rectifying the sound into electrical energy for ampli-

fication. The other metal case holds the loud-speaker with a transformer and a long cord of wire with a plug at the end to fit into a socket in the case holding the projector.

The collector classified the importation under that part of paragraph 228 (b) of the Tariff Act of 1930 reading as follows:

* * * projection lenses * * * all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for * * *.

The particular provision invoked by the collector, as disclosed by his letter of transmittal, is that part of the foregoing quotation covering projection lenses, and frames and mountings therefor, which carries a dutiable rate of 45 per centum ad valorem.

Plaintiffs' principal claim is for classification under paragraph 353 of the Tariff Act of 1930, as modified by the trade agreement with the United Kingdom, T. D. 49753, wherein the said paragraph, so far as it is applicable to the present issue, is set forth as follows:

| Tariff Act of 1930; paragraph | Description of article | Rate of duty |
|---|---|---|
| 353 | Electrical signaling, radio, welding, and ignition apparatus, instruments (other than laboratory), and devices, electrical generators, transformers, converters, double current and motor generators, dynamotors, and all other articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, locomotives, portable tools, furnaces, heaters, ovens, refrigerators, and signs (except telephone, wiring, diagnostic, and therapeutic apparatus, instruments, and devices, primary cells, flashlights, switches, switch gear, fans, blowers, washing machines, and machines not herein provided for by name which would be dutiable under paragraph 372, Tariff Act of 1930, if of a kind which could be designed to operate without such electrical element or device, and except articles of a class or kind with respect to which United States import duties have been reduced or bound against increase pursuant to any agreement heretofore concluded under section 350 of such act, as amended); all the foregoing, not specially provided for, finished or unfinished, wholly or in chief value of metal, and not provided for heretofore in any item numbered 353 in this schedule. | 25% ad val. |

An alternative claim is made for classification under the general provision for "all other machines, finished or unfinished, not specially provided for" in paragraph 372 of the Tariff Act of 1930, with duty assessment at the rate of 27½ per centum ad valorem.

One witness testified herein. He is importer's son who received the merchandise in question as a gift from his father. The witness is an attorney at law and, as a hobby, has given considerable study to motion-picture photography, particularly with reference to the way pictures are taken and projected. When

he was a student at Dartmouth University, he worked at that institution as a motion-picture photographer and motion-picture projectionist. His uncontradicted testimony herein establishes an undisputed set of facts. Using photographs, plaintiffs' exhibits 1, 2, and 3, for illustrative purposes, the witness described the construction and operation of the imported mechanism in a way that supports the following summary.

The sound motion-picture projector under consideration uses a film that not only carries the picture sequence, but also has a sound track as an integral part thereof. The motive power for the mechanism is an electric motor which causes the film to travel through the projector in this way. The reel of film is mounted on an arm and, in unwinding, it passes over so-called idlers and is then threaded around a sprocket, traveling in a loop through a gate. In the gate, there is an aperture at which the film remains momentarily still while a shutter opens, and the light from an incandescent lamp passes through the film and through the projector lens, causing the picture to appear on the screen. As the film comes out through the bottom of the gate, it is threaded in another loop and carried through a sprocket and two additional idlers to the take-up reel.

The sound track is an integral part of the film. Light from an incandescent lamp passes through the sound track to a photoelectric cell that transforms variations in light density, caused by irregularities in density on the sound track, into fluctuations in an electric current. A control panel regulates the volume and tone of the sound.

The loud-speaker is electrically connected with the projector by a five-point connector to accommodate the five wires wrapped in an insulating cable connecting the loud-speaker and the projector. The electrical connection energizes an electromagnet in the loud-speaker, thereby exciting the voice coil and causing the diaphragm to vibrate, thus producing sound. Speed of the sound projection is regulated by a large gear upon which is mounted a flywheel and a pulley. Three electronic tubes rectify and amplify the sound.

The transformer is essential to change the electric current for proper sound application. The projector is designed to operate only on alternating current. Direct current is necessary to excite the voice coil and the transformer accomplishes the necessary adjustment. A series of jacks makes the projector adaptable to any area, irrespective of the type of voltage available.

Counsel for plaintiffs, in their brief, argue that the imported article is something more than projection lenses, and frames and mountings therefor, to which paragraph 228 (b), *supra*, adopted by the collector, is limited. The point is presented as follows:

Similarly as the lens and its frames and mountings constitute a very small part of the article involved in this case and as the sound projector as well as other projecting apparatus have been combined with the projection lens and mountings to make up the imported article herein, this article is a separate and distinct article which is something more than "projection lenses" and "frames and mountings therefor."

To support that contention, the analogous case of *United States* v. *Paramount Publix Corp.*, 22 C. C. P. A. (Customs) 452, T. D. 47453, is cited. In that case, the merchandise under consideration was a motion-picture reproducing machine, consisting of a complete projection apparatus, a camera or picture-taking apparatus, a motor, reel holders, and other important features and associated parts. The entity was used to transfer or copy a finished or developed film to another unexposed film of the same size. The collector classified the merchandise under the provision in paragraph 228 (b), Tariff Act of 1930, for "photographic or projection lenses * * * frames and mountings therefor, and parts of any of the foregoing."

In excluding the merchandise from that provision, the court stated:

* * * If Congress had meant for a complete moving-picture projecting apparatus, including a motor, reels, and all its parts to be dutiable under paragraph 228 (b), it would have been an easy matter to have placed in the paragraph language comparable to that used by the collector in characterizing the involved merchandise as "projection apparatuses and parts thereof." (Note the special provision in paragraph 1551, *supra*.) Having failed to do so, we are not inclined to indulge in a more liberal construction of the provision under consideration, in the direction contended for by the Government, than is indicated in such decisions. We, therefore, for the reasons above stated, hold that the complete projecting apparatus, when combined with the complete photographic camera, together with the associated parts, constitutes a machine not provided for under said paragraph 228 (b), *supra*.

Among the cases discussed by the court in the *Paramount* case, *supra*, and the one which has direct bearing on the issue before us, is the case of *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078. In that case, the merchandise consisted of a combination of a microscope and a projection apparatus. The collector classified the merchandise under paragraph 228 (b), the pertinent part of which reads as follows:

* * * photographic or projection lenses, * * * microscopes, all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

The importation there under consideration embodied the principle of the microscope, which magnified the specimen under observation, and a projection apparatus that, through the use of a lens or a light, projected the magnified image of the specimen on a screen or in a picture. The device was used in the laboratories of hospitals, institutions of learning, and industrial concerns where examination of microscopic specimens was desired.

The court considered the combined capabilities of the importation and, in reaching its conclusion, reasoned as follows:

* * * We are not impressed with the contention of the Government that the importation at bar consists of a projection lens and frames and mountings therefor. The importation embraces a projection lens and a microscope and something else in the nature of projection apparatus. It may include what might be termed, under some circumstances, frames and mountings, but it would be difficult to determine to what the frames and mountings belong—certainly not frames and mountings for a microscope, because the term "microscope" embraces the whole of that portion of the optical instrument devoted to the principle of magnification. We hardly think either of the terms "projection lenses * * * frames and mountings therefor," or "projection lenses * * * microscopes * * * frames and mountings therefor," aptly describes the merchandise at bar, but we do hold that the provision for "all optical instruments, frames and mountings therefor," clearly embraces the importation at bar.

The important phase of the two cases is the recognition given by the court in both instances to that feature of the imported mechanism which extended its category beyond classification as a projection apparatus under said paragraph 228 (b). In the *Clay Adams Co., Inc.*, case, *supra*, the microscope was given the controlling consideration. In the *Paramount* case, *supra*, the photographic camera was emphasized.

The condition in this case is analogous to that which was before the court in the two cited ones. Here, the complicated sound apparatus is the feature which broadens the status of the imported mechanism, extending the classification thereof beyond the scope of the provisions of paragraph 228 (b), *supra*, adopted by the collector. The reasoning applied in the *Paramount* and the *Clay Adams Co., Inc.*, cases, *supra*, has equal force and effect herein. Accordingly, we hold

that the merchandise under consideration is not within the class of articles or parts contemplated by said paragraph 228 (b). The collector's classification is, therefore, overruled.

Paragraph 353, as modified, *supra*, provides for the present merchandise within the construction of said paragraph under the case of *United States* v. *Dryden Rubber Co.*, 22 C. C. P. A. (Customs) 51, T. D. 47050, wherein the court stated:

On the other hand, if, when the article is imported, it is so constructed as to utilize electrical power solely, and, therefore, is, essentially, an electrical article, and its various parts are imported, are intended to be used, and are used, together, as was the case with the imported merchandise, then no reason can be seen why it should not be considered, for dutiable purposes, within the scope of the third division of this paragraph, for in such case, we think the article should be held to be included within the class of articles named in the paragraph.

The record herein is conclusive that the merchandise under consideration is designed for and exclusively operated by an electric motor and that its internal mechanisms include transformers, electric lights, electronic tubes, and other electrical devices, all of which are essential to the complete operation of the article, which, it has been stipulated, is in chief value of metal.

For all the reasons hereinabove set forth, and following the *Dryden Rubber Co.* case, *supra*, we hold the merchandise under consideration to be classifiable under said paragraph 353, as modified, and dutiable at the rate of 25 per centum ad valorem, as claimed. The protest is sustained and judgment will be entered accordingly.